### STATE v. JOSEPH MLYNCZAK.

123 N. W. (2d) 358.

August 9, 1963—No. 38,799.

*Joseph Mlynczak,* pro se, for appellant.

*Walter F. Mondale,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent.

THOMAS GALLAGHER, JUSTICE.

Defendant was charged in an information filed in the District Court of Winona County with the crime of attempted indecent assault as follows:

"* * * on the 2nd day of September in the year 1961, at said County [defendant] then and there being, did wilfully, unlawfully, knowingly, and feloniously attempt to persuade and induce a male under the age of sixteen years, to wit: Frank Michalowski of the age of 14, to perform an indecent act upon the body of him, the said Joseph Mlynczak, * * *."

The information was based upon a complaint issued by the municipal court of the city of Winona on October 27, 1961. On October 28, 1961, defendant was brought before that court for a preliminary hearing and bound over to the District Court of Winona County for trial. Prior to his arraignment in the district court the following proceedings occurred:

"BY THE COURT:

"Q. Mr. Mlynczak, the County Attorney, has heretofore filed a complaint against you and the charge to be made is charging you with a felony, and the Court would like to know whether or not you have an attorney?

"A. No, and I ain't going to get one because I don't care what you do. I know I didn't commit a crime. I lead a clean life but I am sorry I did, so you can do what you want with me. * * * It is my word against an idiot kid, so if you want to send me to Stillwater go ahead * * *.

"THE COURT: You may be seated. Mr. Sawyer [the county at-

torney], I do not want to take a plea from this man, and I will appoint an attorney for him.

"Mr. Mlynczak, the Court is going to appoint an attorney—

"DEFENDANT MLYNCZAK: I don't care about no attorney or not. I told you I don't care what happens to me.

"THE COURT: The Court is going to appoint one anyhow, and I will make the appointment and give notice to the Clerk * * * and we will continue this arraignment until Monday, * * *."

Following these statements, defendant was arraigned on November 24, 1961. At that time, Mr. P. S. Johnson, an attorney appointed by the court to represent defendant, appeared on his behalf. At that time the following proceedings took place:

"THE COURT: As I understand it the information has not been filed?

"MR. SAWYER: That's correct, Your Honor.

"THE COURT: The defendant is in court?

"MR. SAWYER: He is.

"THE COURT: The defendant will stand. You may read the information.

"MR. SAWYER: May the record show, Your Honor, that I furnished a copy of this information to Mr. P. S. Johnson, who is an attorney in the City of Winona and who is in court accompanying the defendant. * * *

"THE COURT: The record will also show that the Court has appointed him as an attorney to represent the defendant.

"MR. SAWYER: Mr. Johnson, will you follow along the reading of the information and if there are any additions or corrections will you bring them to our attention, please.

"MR. JOHNSON: I will."

The information as above set forth was then read to defendant. Following this reading of the information, the following proceedings occurred:

"THE COURT: Mr. Mlynczak, you heard the reading of this information?

"DEFENDANT MLYNCZAK: I did.

"THE COURT: Do you understand the meaning of it?

"DEFENDANT MLYNCZAK: Yes, I do.

"THE COURT: You understand that you are entitled to have a trial by jury?

"DEFENDANT MLYNCZAK: Yes.

"THE COURT: That it is the duty of the state to prove you guilty beyond a reasonable doubt; do you understand that?

"DEFENDANT MLYNCZAK: I am not guilty, and I didn't commit no crime * * *—

"THE COURT: Just a moment. You understand that that you are entitled to—do you wish now to enter a plea?

"DEFENDANT MLYNCZAK: I am not guilty.

"THE COURT: Okay, you have entered a plea.

"DEFENDANT MLYNCZAK: I don't need an attorney. I didn't commit no crime and I don't need an attorney.

"THE COURT: Mr. Johnson, you will still be the attorney for the defendant, and the defendant has entered a plea of not guilty."

On December 18, 1961, the following proceedings were had in the district court:

"BY THE COURT:

"Q. Mr. Mlynczak, the Court appointed Mr. P. S. Johnson as an attorney for you and you were before the Court on November 24th and entered a plea of not guilty?

"A. That's right.

"Q. I understand that Mr. Johnson has consulted with you since that time, is that correct?

"A. A little bit.

"Q. Mr. Johnson is sick and he has been sick for about a week or ten days, and I kept in touch with his office to ascertain when he would be physically at his office and be able to try this case for you, and I find this morning that he is still ill and will not be able to try this case this week.

\* \* \* \* \*

"Q. The purpose of having you over here this morning is to tell

you of this situation and to say to you that if you desire to have your case tried this week I can have it tried but I will be unable to have an attorney for you. * * *

"A. Well, that's all right, I'll wait.

"Q. You will wait?

"A. Yes.

"Q. Now Mr. Mlynczak, it may be too that we would have to wait until about the 15th of January.

"A. I don't care.

"Q. You will wait to that time?

"A. I will wait even six months, I don't care how long it takes."

On January 8, 1962, defendant again appeared before the district court, at which time the following proceedings occurred:

"THE COURT: Mr. Sawyer, this is the time for taking care of the criminal matters for this term of court?

"MR. SAWYER: Yes, Your Honor. We have matters to be brought before the Court and at this time the case of State of Minnesota vs. Mlynczak. Mr. Mlynczak is charged with attempted indecent assault, and is represented by Mr. P. S. Johnson, and arrangements have been made with the Court and with Mr. Johnson for the trial of this case on January 22, 1962, at two o'clock."

On January 24, 1962, defendant again appeared before the district court, at which time the following proceedings were had:

"THE COURT: Is Mr. Mlynczak in Court? Will you stand, please. Take the oath, please.

* * * * *

"BY THE COURT:

"Q. Mr. Mlynczak, you were in court before and the Court asked you a number of questions, and you responded that you didn't want an attorney; is that your opinion today?

"A. I didn't have the money because I owe my brother over $200 when he was feeding me * * *. If I could hire an attorney for $43 I will hire him. * * *

"Q. In answer to a question which I gave to you the other day

you said you didn't want an attorney; have you changed your mind now?

"A. Yes.

"Q. And you want an attorney?

"A. I do.

"Q. I understand, and at my direction Mr. Johnson has talked to you, is that correct?

"A. That's right.

"Q. Do you consider him to be a proper attorney for you?

"A. I do.

"Q. Do you want him as an attorney?

"A. I do.

\* \* \* \* \*

"The Court: Mr. Johnson, will you proceed as his attorney?

"Mr. Johnson: I will, Your Honor.

"The Court: And you understand that you are on for trial tomorrow morning at ten o'clock?

"Mr. Johnson: Yes, Your Honor. \* \* \*

\* \* \* \* \*

"Mr. Sawyer: If it please the Court there are a few matters I would [like] to bring to the Court's attention at this time.

\* \* \* \* \*

"Mr. Sawyer: \* \* \* This morning in final preparation for this case I attempted to contact Frank Michalowski, Jr., who, as the Court knows from the complaint, is a person upon whom the state alleges the defendant made the attack, as charged. I was informed by teachers at the St. Casimir's School where Frank is a student that he was not in school today. He has been in regular attendance before today, but today he was not there, and that he was reported home with the flu. I contacted the home and he was not there. I reached his mother, Mrs. Donna Michalowski, who informed me she did not know where her son was because she at that time had not returned from her work. She stated she assumed he was in school since he apparently left at seven o'clock for school, and at least was not home at seven o'clock this morning when she got up.

In further questioning Mrs. Michalowski in reference to her son she said she did not wish to have him exposed to this type of trial. I asked her where or when she had changed her mind about this; she said she had been persuaded by Mr. Johnson. She further stated she is being represented by Mr. Johnson * * * who is representing her with reference to a divorce against her husband. That she went to see Mr. Johnson the 30th of November, 1961, retained him at that time for the purpose of obtaining a divorce for her. That the divorce papers were prepared on or about January 8, 1962. * * * She further states that at numerous times during the conferences with reference to the divorce or when she went to Mr. Johnson's office to talk about the divorce he changed the subject and talked to her about this criminal case. That he inquired of her on numerous occasions concerning the effect, if any, which this was having on her son, advising her that he felt—he certainly would not like to see any young boy testify in a case of this kind. She states that Mr. Johnson prevailed upon her to show him the statement which the lad had given to the police department concerning the facts of this alleged offense.

"I feel very strongly that Mr. Johnson is in no position to represent this woman who this morning told me she did not wish to come to court herself and testify because if she took the stand Mr. Johnson would be in the position to use against her some of the information which she has disclosed to him in the conferences regarding the divorce.

"I further request, since we do not at this time know where this boy might be * * * this case be continued until his whereabouts can be ascertained * * *.

\* \* \* \* \*

"THE COURT: Have you a suggestion to a time when it should be postponed?

\* \* \* \* \*

"MR. SAWYER: Tuesday at two o'clock?

"THE COURT: Yes.

"MR. SAWYER: In the event—well I will leave it up to Mr. Johnson

what he does about representing this woman. If additional time is necessary in order for the case to be prepared under the circumstances I would have no objection.

"I should mention, also, that I contacted the grandmother of this boy * * * Mrs. Francis Michalowski * * * I asked her where her grandson might be * * * and she said she did not know. I said 'I assume he is in school' and she said 'He is not in school'. I asked if he was ill, and she said 'He is not ill'; and I asked if she knew where he was, and she said 'You will have to contact his father'.

"MR. JOHNSON: Your Honor, may I make a statement?

"THE COURT: Yes.

"MR. JOHNSON: Your Honor, I don't represent Mrs. Michalowski, I represent the father, Mr. Michalowski, who has never been consulted by the County Attorney in the matter [in] which his son is involved. Mrs. Michalowski called to see me and told me about this case and she asked me whether her son would have to appear if he was subpoenaed, and I recall telling her she should talk to the County Attorney about it. She later called * * * and said she talked to the County Attorney and he told her she would have to be in court with her son.

"I investigated Mrs. Donna Michalowski and I found out in 1959 she was committed as a mentally ill person to the Rochester State Hospital; that she has not been discharged from the hospital.

"Her husband called to see me and he didn't want to go ahead with this case, feeling that the boy was being forced into court. She did show me a statement that her son made. She showed that to me voluntarily; and there was nothing underhanded about this * * *. I am representing the husband, so far as I know, and he has told me certain things about this case which I am not at liberty to disclose for the reason that the conversation is privileged. If the Court wants me to withdraw from this case I will be only too happy to do so.

"MR. SAWYER: The only point, Your Honor: it seems a little bit strange under any circumstances for an attorney to represent a parent of a child who has supposedly been attacked by a man who

has the same attorney and who is representing this defendant in a criminal action. * * *

"MR. JOHNSON: Your Honor, it is my contention that counsel for defendant has just as much right to consult with the parents of a child who is bringing a charge of this kind as the County Attorney's office, and I maintain I had a perfect right to talk to the parents; and this isn't a one-way proposition. The County Attorney's office doesn't have a hold on the parents.

"THE COURT: Gentlemen, you are both officers of the court * * * and I do not intend upon this bench, at this moment, to be a referee; * * * but until a matter is definitely before the Court and set I will take no part as a referee in this matter * * *."

After a trial by jury a verdict was returned finding defendant guilty of the crime charged in the information. At the time he appeared in the district court for sentencing, the county attorney moved to present a further information which had been filed pursuant to Minn. St. 610.29[1] and 610.31.[2] This motion was granted and a copy

---

[1]§ 610.29 provides: "A person who, after having been three times convicted in this state of felonies, or attempts to commit felonies, or, under the laws of any other state or country, of crimes which, if committed * * * would be felonies, commits any felony or attempts to commit any felony * * * upon conviction of such fourth or subsequent offense, shall be punished as follows:

\* \* \* \* \*

"(2) If the fourth or subsequent offense is such that the offender upon a first conviction might be punished by an indeterminate sentence of imprisonment, then he shall be sentenced to imprisonment under an indeterminate sentence of which the minimum shall be not less than twice the shortest term prescribed upon a first conviction, and the maximum shall be for life; * * *."

[2]§ 610.31 provides in part: "If at any time before sentence, or at any time after sentence but before such sentence is fully executed, it shall appear that a person convicted of a felony, or an attempt to commit a felony, has been previously convicted of any crime so as to render him liable to increased punishment by reason thereof * * * it shall be the duty of the county attorney of the county in which such conviction was had to file an information with the court wherein the conviction was had ac-

of the information was then delivered to defendant's counsel in the presence of defendant. Thereupon the county attorney read the information in the presence of defendant. In substance it charged him with having been previously convicted of four felonies, named therein, to wit:

"1. That on November 8, 1928, defendant herein was convicted in the Circuit Court of Trempealeau County at Whitehall, Wisconsin, of the crime of Grand Larceny which crime, under the Laws of the State of Wisconsin and of the State of Minnesota, was and is a felony.

"2. That on November 10, 1933, defendant herein was convicted in the Circuit Court of LaCrosse County at LaCrosse, Wisconsin, of the crime of Assault with a Dangerous Weapon with Intent to Commit Robbery which crime, under the Laws of the State of Wisconsin and of the State of Minnesota, was and is a felony.

"3. That on January 11, 1951, defendant herein was convicted in the District Court of Winona County at Winona, Minnesota, of the crime of Carnal Knowledge of a Fifteen Year Old Female Child which crime, under the Laws of the State of Minnesota, was and is a felony.

"4. That on January 31, 1962, defendant herein was convicted in the District Court of Winona County at Winona, Minnesota, of the crime of Attempted Indecent Assault which crime, under the Laws of the State of Minnesota, was and is a felony and for which crime said defendant has not yet been sentenced."

The court thereupon inquired of defendant whether he had been convicted of such prior felonies, and in each instance he stated to the

cusing such person of such previous convictions, whereupon the court shall cause such person, whether confined in prison or otherwise, to be brought before it, either in term or in vacation, and shall inform him of the accusations contained in the information, by reading the same to him, and of his right to be tried as to the truth thereof according to law, and shall require such person to say whether he has been convicted as charged in the information or not."

court that he had been so convicted. The court thereupon ordered sentence as follows:

"* * * Joseph Mlynczak, it is the sentence of the law and the judgment of this Court that as punishment for said crime of attempted indecent assault, increased by reason of your previous felony convictions, that you be punished by confinement in the State Prison of the State of Minnesota at hard labor until duly discharged by due course of law or competent authority."

In a letter transmitting a presentence investigation report of the Department of Corrections for the State of Minnesota to the District Court of Winona County on March 2, 1962, prior to its sentencing of defendant, the following appears:

"Transmitted herewith please find presentence investigation requested on the above named.

"The Defendant was convicted of the crime of Indecent Assault by reason of a verdict. According to some versions of the incident, it might be possible that defendant's claim of innocence could be correct. However, the authorities in Winona feel that he has been involved in similar offenses, which could not be proved. The Defendant has a quite extensive record of prior arrests and convictions dating back to his youth. Apparently he has never been employed on a permanent basis. His IQ of 72, resulting from an institutional examination would class him very low mentally. However, according to information received, during his commitments to penal institutions over the years, he conducted himself commendably therein, being assigned as a trusty and working in the honor camp.

"The Defendant is a 67 year old man with an apparently poor reputation in the Winona area."

The report indicated that defendant had served sentences for crimes additional to those referred to in the information charging prior convictions. This report also referred to a statement by Mr. Frank Michalowski, father of the complaining witness, to the effect that he believed that his boy had not been assaulted as originally stated, but that he had been "put up" to making the charges by his

mother, who had been in the Rochester State Hospital for mental difficulties and who had previously threatened her husband with a plan to bring "shame and disgrace" to the family. This report further indicates that the father of another boy, who had testified at defendant's trial with respect to a similar incident between defendant and the witness, believed his son had been honest in his testimony with respect thereto.

In May 1962 defendant served notice of his appeal from the judgment of conviction and sentence. In August 1962 he served and filed a petition to this court for a writ of error coram nobis. As a basis for this appeal his principal contentions are:

(1) That the information dated November 17, 1961, did not state facts sufficient to constitute a public offense;

(2) That he was denied due process in that he was inadequately represented by counsel; and

(3) That the evidence was insufficient to sustain his conviction in that the complaining witness upon whose statement the information had been based on the witness stand at defendant's trial had repudiated statements made by him in his complaint and had testified that such statements were false and untrue and that defendant had not committed the acts described therein.

No transcript of the testimony was submitted in connection with the proceedings here but attached to defendant's motion for the writ of error coram nobis are copies of newspaper articles with reference to his trial, conviction, and sentence. Excerpts therefrom are as follows:

"The case was originally scheduled to begin Thursday, but the boy [Frank Michalowski, Jr.] could not be located, Berg said. Police learned the boy had been taken to relatives at LeCenter, Minn. with the mother. Police went to fetch the boy back and serve him with a subpoena ordering him to testify.

"The boy indicated he did not want to testify.

"The father testified he had taken his son away because his son had told him 'Nothing happened.'

"Another 13-year-old boy testified Mlynczak had committed the same act with him.

\* \* \* \* \*

"The case against Joseph Mlynczak \* \* \* went to the District Court today at 11:54 a. m.

"The boy on whom Mlynczak is charged with attempting to commit the act said on the witness stand Tuesday afternoon that he lied earlier when he told police Mlynczak committed the act.

\* \* \* \* \*

"Because of the unusual nature of the disclosure by the boy, called as a witness for the State \* \* \*, [the trial court] allowed Sawyer to cross-examine his own witness.

"The boy admitted making statements to Sawyer and to Winona Police Captain Donald Berg, that the defendant had attempted the assault. The boy said he was lying then.

"However, he admitted being in defendant's shack on Frog Island, where the alleged assault occurred Sep 2.

"The boy's mother testified the boy had been reluctant to tell her what allegedly happened. She felt it was her duty to have the boy testify, however.

"The boy's father said his wife had been under doctor's care after suffering a nervous breakdown in 1959.

\* \* \* \* \*

"Despite the victim's testimony in District Court that a man charged with [attempted] indecent assault had not committed the attempt, the defendant was found guilty by a jury in less than four hours Wednesday.

"Joseph Mlynczak, 66, Frog Island, was taken to county jail to await sentencing by Judge Leo F. Murphy.

\* \* \* \* \*

"Mlynczak jumped up and shouted, 'Judge, I want you to give me a life sentence. I want to die up there.'

\* \* \* \* \*

"Mlynczak has served three previous terms in State prison.

Mlynczak was charged with attempting to force a 13-year-old boy to commit an indecent act.

* * * * *

"His signed statement was admitted."

■ A reference to Minn. St. 617.08[3] and 610.27,[4] under which defendant was tried and convicted, clearly manifests the sufficiency of the information charging him with an attempt to commit indecent assault as defined in § 617.08. This section specifies that "every person * * * who shall persuade or induce any male or female under the age of 16 years to perform any indecent act upon his or her own body, or the body of another, shall be guilty of a felony." Section 610.27 makes an attempt to commit such a crime without success a felony and prescribes the penalty therefor. In construing these statutory enactments, we have held that it is not essential that an indictment allege the particular acts constituting the indecent liberties if the language of the statutes is followed generally. State v. Kunz, 90 Minn. 526, 97 N. W. 131. Here the information specifically set forth the charge that defendant, on September 2, 1961, willfully and feloniously attempted to persuade and induce a male under the age of 16 years, to wit: Frank Michalowski, to perform an indecent act upon the body of him, the said Joseph Mlynczak. Since this

---

[3] § 617.08, which defines indecent assault, sets forth that: "Every person * * * who shall persuade or induce any male or female under the age of 16 years to perform any indecent act upon his or her own body or the body of another, shall be guilty of a felony."

[4] § 610.27, which defines attempts to commit crimes and prescribes the penalty therefor, provides in part: "An act done with intent to commit a crime and tending, but failing, to accomplish it, is an attempt to commit that crime; and every person who attempts to commit a crime * * * shall be punished as follows:

* * * * *

"(2) * * * by imprisonment in the state prison for not more than half of the longest term, * * * or by fine of not more than half the largest sum, prescribed upon conviction for the commission of the offense attempted, or by both such fine and imprisonment."

language adequately covers the offense with which defendant was charged, it is clear that the information is sufficient under § 617.08.

■ With reference to defendant's claim of inadequacy of counsel (common in matters of this kind) the outline of the proceedings above clearly establishes the lack of any basis for this charge. Throughout the proceedings in the district court his constitutional right to be represented by counsel was safeguarded by the court. At first defendant indicated to the court he did not wish counsel appointed for him and the court then refused to accept a plea. The record of the later proceedings establishes that the court entered a plea of not guilty and that defendant acquiesced in the selection of Mr. P. S. Johnson as his counsel and manifested his satisfaction with Mr. Johnson as a "proper attorney" for him. Under the circumstances it is clear that defendant's present contention as to inadequate representation by counsel is without foundation. State v. Gorman, 219 Minn. 162, 17 N. W. (2d) 42.

■ The remaining claim of defendant herein relates to the inadequacy of the evidence to sustain the jury's verdict as to his guilt. Since this cannot be determined without a transcript of the testimony and other evidence submitted at the trial, which has not been procured or submitted here, we are unable to pass upon the merits of defendant's contention. Section 611.07, subd. 3, provides:

"When a defendant convicted of a felony * * * has appealed to the supreme court or has procured a writ of error, or who has otherwise brought the validity of his conviction before the supreme court for review, applies to the district court and makes an adequate showing that because of his poverty he is unable to pay for a transcript which he reasonably needs in presenting the alleged errors raised for appellate review, the district court shall, at the expense of the county in which the defendant was convicted, order a transcript, or a part or an abridgment of the transcript, or a bill of exceptions, as the case may be * * * necessary for a proper presentation of defendant's cause for appellate review, unless it shall appear that his cause upon review may properly be presented on the judgment roll referred to in section 632.04, or on the synopsis of the testimony

prepared pursuant to section 640.10, or on any other abridgment or report of testimony made available by law, or on any combination of such available reports or records."

We are of the opinion that under this section the District Court of Winona County should make its order directing the preparation of a transcript containing the testimony submitted at defendant's trial in so far as the same may be relevant to the issue of whether or not the evidence submitted is sufficient to sustain defendant's conviction. Upon such a transcript's being certified by the district court as containing such evidence and filed here, this court will then be in a position to review such testimony and the exhibits submitted and from them determine whether the evidence is adequate to support the jury's finding as to defendant's guilt.

Remanded with directions as set forth in the opinion.