OWATONNA COUNTRY CLUB, INC., Respondent,

v.

Esther V. KOHLMIER, Appellant.

No. C4–84–12.

Court of Appeals of Minnesota.

Aug. 21, 1984.

Stephen J. Smith, Owatonna, for respondent.

Gary Voegele, Cook, Voegele & Peahl, P.A., Fairbault, for appellant.

Heard, considered and decided by PARKER, P.J., and FOLEY, and HUSPENI, JJ.

## OPINION

FOLEY, Judge.

This case is a dispute about a parcel of land conveyed by a warranty deed that contained an ambiguous legal description. A declaratory judgment action was tried to the court in July 1983. The court found that the parties had intended to transfer the entire parcel. The court's memorandum indicates that the deed was reformed to reflect the correct legal description.

Although appellant assigns several errors at trial, the record shows that this appeal is taken from the judgment. When there has been no motion for a new trial the scope of review is limited to determining whether the evidence sustains the findings of fact and the findings support the conclusions of law. We affirm.

## ISSUES

1. Is the evidence sufficient to sustain the trial court's finding that the parties intended to transfer the entire parcel in question, and does this finding support its conclusion that the deed should be reformed?

## FACTS

In 1940 Esther Kohlmier and her late husband George Kohlmier bought a parcel of about ten acres in Owatonna. The warranty deed conveyed the following:

The North Ten (10) acres of the following described land, to-wit: The Northwest Quarter of the Northwest Quarter of Section 21, Township 107, Range 20 West, except the Railroad right of way, running across said parcel of land, and excepting also, all of said parcel lying East of the Railroad right of way.

After George Kohlmier died in 1958, Mrs. Kohlmier sold an irregularly-shaped

parcel of 17.92 acres just south of the land described above to the Owatonna Country Club. The club used the land to expand its golf course.

In the summer of 1973 Ed Stepanek, then president of the country club, and Dale Hursh, a member of its board of directors, contacted Mrs. Kohlmier to see if she wanted to sell the ten acres located north of the prior purchase, south of the section line, and west of the railway. The club also wanted an easement giving access from the north at 18th Street and Mosher Avenue.

Mrs. Kohlmier agreed to sell and signed a purchase agreement for $5,000. She brought the purchase agreement to her lawyer, James Rietz, who reviewed it. Rietz changed the width of the easement from 33 to 25 feet, and this change was incorporated into the warranty deed.

In discussing the purchase with Mrs. Kohlmier, neither officer of the club used a legal description. They told her they wanted to buy all the remaining property south of the north section line of section 21 and west of the railroad tracks. Rietz testified that he showed Mrs. Kohlmier the area on a map when he reviewed the purchase agreement with her.

The warranty deed dated September 4, 1973, describes the following land:

> The North 10 acres of the Northwest Quarter of the Northwest Quarter of Section 21, Township 107, Range 20 West except the railroad right of way running across said parcel of ground and excepting also all of said parcel lying East of the said railroad right of way; together with a perpetual easement from party of the first part to party of the second part for driveway right of way over and across the South twenty-five (25) feet of S.W. Quarter of Section 16, Township 107, Range 20 West lying East of the railroad right of way in Steele County, Minnesota which property is now owned by party of the first part; the said easement shall be binding on party of the first part and on any other person who shall hereafter acquire title to the prop-

erty over which this easement is granted. The said easement shall include the right of party of the second part to the free use of the described land at any and all times as an unrestricted means of ingress and egress for persons and vehicles between the above described 10 acres and 18th and Mosher Streets in Owatonna, Minnesota. The use of the said property for the said purposes shall be without cost to party of the second part but first party shall have no duty or responsibility for the maintenance, upkeep or repair of said right of way.

Because of the slight difference between this deed and the 1940 deed (the "the following described land, to-wit:" clause is omitted), a surveyor testified that this description is ambiguous. The 1940 deed describes ten acres of land conveyed *after* the exceptions are accounted for, whereas this deed describes ten acres *before* the exceptions are accounted for. The deed therefore describes only six acres west of the railway, including a one-acre triangular-shaped section at the west line already owned by the country club. It also excludes the lower four-acre section and leaves it without access to the road.

Mrs. Kohlmier now claims that she intended to sell only the lower four acres without access to 18th Street and that she did not intend to grant the easement.

No one has admitted to providing the legal description. Rietz testified that he did not provide it. The attorney for the country club at the time of the transaction testified that the legal description came from Rietz.

After the purchase the club used the easement to bring in heavy equipment needed to construct the thirteenth fairway. It has also used the area as a dumping ground for bridge ties and fill. In 1975 Mrs. Kohlmier sold the land subject to the easement to her brother, Lloyd Steffan. Steffan testified that he thought he had purchased the northern five acres described in the club's warranty deed. The error was not discovered until 1980, when the

country club asked Steffan to sign a quit-claim deed for the easement.

## DISCUSSION

### I

The record shows that appellant did not make a motion for a new trial and that this appeal is from the judgment entered pursuant to the findings. When there has been no motion for a new trial the scope of review is limited to determining whether the evidence sustains the findings of fact and the findings support the conclusions of law. *See Cool v. Hubbard*, 293 Minn. 349, 199 N.W.2d 510, 512–13 (1972); *Clausen v. State*, 288 Minn. 558, 181 N.W.2d 471 (1970). Matters involving trial procedure and evidentiary rulings are not subject to review unless there was a motion for a new trial in which such matters were assigned as error. *See* 3 J. Hetland & O. Adamson, *Minnesota Practice* 54 (Supp.1983).

There is more than enough evidence to support the trial court's finding that Mrs. Kohlmier intended to convey the whole parcel. Respondents introduced evidence showing that the parcel had always been referred to as *one* ten-acre parcel, that the officers of the club communicated their desire to buy all the remaining land south of the section line and west of the railroad, and that they paid more than market value for the whole ten acres. James Reitz, appellant's attorney at the time of the conveyance, testified that she told him she wanted to sell everything south of 18th Street and west of the railroad. He also testified that he showed her the area on a map and that he changed the width of the easement from 33 to 25 feet because appellant requested it. Furthermore, the easement would be useless if only the lower part of the parcel were conveyed, because it only provided access to the upper part.

In addition, respondents showed that the phraseology in the deed describing the parcel has existed in the chain of title at least since the 1940 warranty deed. The deed transferring the parcel from George Kohl-

mier's company to his estate used that language, as did the Final Decree of Distribution that transferred the property to Esther in 1961. The only difference between those deeds and the one at issue is the omitted phrase "the following described land, to wit" and punctuation. Mrs. Kohlmier also leased the property to a gravel mining operation from 1961 to 1973, and the lease used language identical to that in the deeds.

Appellant's argument boils down to her contention that her attorney and the country club may have intended to convey the entire parcel and easement, but she did not. Her brother, who wants to obtain the land himself, testified that she did not intend to sell the whole parcel. So did her accountant. However, these contentions are not supported by any other evidence.

A written instrument may be reformed if the following elements are proved: (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party. *Nichols v. Shelard National Bank*, 294 N.W.2d 730, 731, 734 (Minn.1980), *citing Theros v. Phillips*, 256 N.W.2d 852, 857 (Minn.1977) and *Fritz v. Fritz*, 94 Minn. 264, 102 N.W. 705 (1905). A trial court's determination regarding reformation will not be disturbed on appeal unless it is manifestly contrary to the evidence. *Metro Office Parks Co. v. Control Data Corp.*, 295 Minn. 348, 353, 205 N.W.2d 121, 124 (1973). We agree with the trial court that reformation was justified under these circumstances.

Appellant argues that the court's finding that she intended to convey the whole parcel does not support the conclusion that the deed should be reformed, because respondent's amended complaint does not specifically request reformation. The original complaint requested it, but the amended complaint requested a declaratory judgment.

There is no legal argument in the transcript to reflect their legal theories, because the parties waived opening and closing statements and relied on briefs submitted after trial. However, it is apparent that the trial court considered the issue to have been litigated at trial. Although appellant now claims that she was surprised and prejudiced by respondent's request for reformation in post-trial briefs, she made no such argument at trial. She did not move for amended findings or for a new trial on this basis.

Furthermore, we doubt that she could have shown any prejudice had she so moved. A fair reading of the amended complaint could lead to no other conclusion but that the plaintiff was seeking to have the ambiguity in the deed corrected and reformed.

## DECISION

The evidence is sufficient to support the trial court's finding that appellant intended to transfer the whole parcel of land, and this finding supports the court's conclusion that the deed should be reformed to correct the ambiguous legal description.

Affirmed.